## Charles Godin, Appellee, v. F. G. Hartwell, Appellant. Gen. No. 16,126.

1. VERDICTS—*when set aside as against the evidence.* A verdict will be set aside as against the evidence where clearly and manifestly so.

2. INSTRUCTIONS—*when cannot be complained of.* If an instruction is improper in departing from the averments of the declaration it cannot be complained of where instructions given at the instance of the complaining party contained a like impropriety.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. A. H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed February 14, 1912.

F. J. CANTY and R. J. FOLONIE, for appellant.

S. P. DOUTHART, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is an action in case by appellee against appellant to recover damages for personal injuries alleged to have been occasioned by a vicious horse belonging to appellant, which appellee, as a servant of appellant,

was required to drive and care for. A trial by jury in the Superior Court resulted in a verdict and judgment against appellant for $1,500, from which judgment he prosecutes this appeal.

The first count of the declaration alleges that for a long time prior to June 13, 1905, appellant negligently kept in his barn a certain horse, well knowing that said horse was accustomed to kick and attack mankind, all of which was unknown to appellee; and that while appellee, on said day, was in the performance of his duties in caring for said horse, and in the exercise of due care for his own safety, said horse suddenly and violently attacked and kicked appellee, etc. The second count alleges that appellant then negligently kept in his barn a certain horse of vicious, ferocious and malicious disposition, all of which was and for a long time had been known to appellant, and was unknown to appellee; and that while appellee was in the exercise of due care for his own safety, and in the performance of his duties, etc. The third count is substantially like the first, except that it further alleges a duty on the part of appellant to notify and warn appellee of the vicious disposition of the horse, and that said horse was accustomed to attack and kick mankind.

It is insisted the verdict of the jury upon the question of appellant's liability is against the clear preponderance of the evidence.

At and prior to June 13, 1905, appellant was engaged in the business of teaming, and kept from 100 to 125 horses in his stables. Appellee was first employed by appellant in February, 1905, as a driver, and served in that capacity thereafter until he was injured. One of the duties of a driver was to feed, care for, clean, and hitch and unhitch the horse or horses driven by him. While an effort was made on behalf of appellant to show that "Ike," the horse in question, was an old, slow going, gentle "plug," there is sub-

stantial evidence in the record tending to show he was a kicker and that he had a vicious and stubborn disposition; that he frequently kicked when struck or tapped with a curry-comb.

Appellee testified that he had never driven or cared for the horse "Ike," until two weeks prior to his injury; that during that time the horse had been quiet and gentle and had manifested no disposition to kick, and that he had no knowledge the horse was a kicker; that upon the occasion in question he unharnessed the horse, put a halter on him and led him into the alley for the purpose of cleaning him; that he tied the horse to a ring in the window sill, and was in the act of walking around behind the horse to get a comb, brush and cloth, when the horse kicked him in the face, causing the injuries complained of. Appellee's version of the occurrence is wholly uncorroborated.

James O'Leary, a witness called on behalf of appellee, testified on direct examination that about two weeks or a month prior to the time appellee was injured, he (O'Leary), while cleaning the horse, slapped him on the hip with the curry-comb and the horse kicked at him, and that he informed appellant's foreman of the circumstance. On cross-examination the same witness testified, that upon one occasion, when the horse was being cleaned, he saw some person hit him with a curry-comb and saw the horse give a jump; that he said to the person, "You had better look out there or you'll get your block kicked off, because he will kick you if you hit him;" that the person might have been appellee, he was not sure; that the signature to the paper then shown him was his; that he read the paper before signing it and the statement contained in it was true. The paper identified by the witness, and offered in evidence by appellant, contains a statement as follows; "The horse was a plug, and gentle, unless you hit him on the flanks. He was all right unless you hit him. I saw Godin tap him on the

flank with the curry-comb one day in the barn and said to him, 'You had better be careful about hitting that horse with the comb, because if you do, he will kick you, as he tried to do me.' '' Appellee did not deny that he had been so cautioned by O'Leary.

James Barry and Frank Carter, two fellow-servants of appellee, testified they were present upon the occasion when appellant was injured, and were then engaged in cleaning horses within a few feet of appellee; that they saw appellee hit the horse with the curry-comb, and heard him say, "Get over there," and immediately saw the horse kick appellee; that when he was kicked appellee was in a stooping position with his back toward the horse's head. Appellee denied that he hit the horse with the curry-comb, but he did not deny that Barry and Carter were present, as they testified, when he was injured.

Edward T. Brindley, Dr. Melville C. Kolb and William Brownson, witnesses called on behalf of appellant, testified that in answer to their several inquiries as to how he was injured, appellee said, in substance, that while he was cleaning the horse, he tapped him with a curry-comb to make him stand over and he kicked him.

It will thus be observed that upon each of several issues in the case, the testimony of appellee, a confessedly interested party, stands alone and uncorroborated, save by the mere fact that he was kicked by the horse, and that upon such issues, the evidence introduced on behalf of appellant, consisting of the testimony of several unimpeached witnesses having no apparent interest in the controversy, is in direct conflict with the testimony of appellee. True, the mere fact that appellee may have struck the horse with a curry-comb for the purpose of making him stand over does not preclude a recovery, but if appellee knew the disposition of the horse to kick generally, he assumed the risk, and if he knew that the horse

would kick when hit with a curry-comb, he was guilty of contributory negligence in hitting the horse.   If the horse was in the habit of snapping at persons and kicking, whenever he was approached, as is testified to by some of appellee's witnesses, it is incredible that appellee could have been in and around the stables of appellant from February until June, and during the last two weeks have taken exclusive care of the horse, without observing his habit and disposition in those respects.

The testimony of appellee bearing upon the material issues in the case, as to his knowledge of the habits and disposition of the horse, and whether or not he was warned not to hit the horse, is, in view of the circumstances disclosed by the evidence, and in view of the fact that he was successfully contradicted in other particulars, entitled to little weight.   We are fully persuaded that the verdict of the jury upon the question of appellant's liability is against the manifest weight of the evidence and should be set aside.

The rulings of the court upon the evidence are substantially free from error, notwithstanding an apparent effort made on behalf of appellee to inject impertinent matter into the record for the purpose of improperly influencing the jury against appellant.   As upon a retrial of the case, the record in that respect will, doubtless, be free from criticism, we do not deem it necessary to further discuss the same.

While the second instruction given at the instance of appellee reveals a departure from the averments of the declaration with respect to the knowledge of appellant of the vicious disposition of the horse, like instructions were given at the instance of appellant, and the latter is thereby estopped from complaining.

Because the verdict is against the manifest weight of the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*